Filed 8/19/24  P. v. Guerrero CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES GUERRERO,<br><br>    Defendant and Appellant. | H051363<br>(Santa Clara County<br> Super. Ct. No. 215585) |

**I.  INTRODUCTION**

Defendant James Guerrero and his brother Richard Guerrero were convicted in 2018 of first degree murder (Pen. Code, § 187)[1] and active participation in a criminal street gang (§ 186.22, subd. (a)).  The jury also found true allegations that defendant and his brother committed the murder for the benefit of a criminal street gang (§ 186.22, subd. (b)(5)) and that a principal personally and intentionally discharged a firearm and proximately caused death in the commission of the murder (§ 12022.53, subds. (d), (e)(1)).  The trial court sentenced both defendant and his brother to aggregate terms of 50 years to life, consecutive to three years.

In the initial appeal by defendant and his brother, this court determined that the trial court erred when it failed to stay the three-year term imposed for each defendant's

---

[1] All further statutory references are to the Penal Code.

count of active participation in a criminal street gang. This court ordered the judgments modified to stay the three-year term imposed for this count and affirmed the judgments as modified. (*People v. Guerrero et al.* (Aug. 19, 2021, H045752) [nonpub. opn.].)

In January 2023, defendant petitioned the trial court for relief under section 1172.6. The trial court denied the petition at the prima facie stage. Defendant appeals from the trial court's denial of his section 1172.6 petition. For reasons explained below, we will affirm the trial court's denial of defendant's petition.

## II. BACKGROUND

### A. *The Trial and Direct Appeal*[2]

Because the trial court dismissed defendant's section 1172.6 petition at the prima facie stage, an extended summary of the evidence from defendant's trial is not necessary to resolve the issue raised in this appeal. Portions of the background provided here, including the statement of this case's procedural history, are drawn from this court's opinion in defendant's direct appeal from the judgment at trial, which is contained in the appellate record in the instant matter. (See § 1172.6, subd. (d)(3).)

Defendant and his brother were members of Norteño gang subsets. The victim, Eric Mendoza, lived in "a Sureño-affiliated apartment complex" in a Sureño neighborhood. In the early morning hours of April 3, 2014, Mendoza's body was found inside his car, with some of the car's windows having sustained gunshots. Mendoza was pronounced dead after police arrived on the scene. A police investigation collected video surveillance footage from the scene, which showed a Jeep Grand Cherokee with a distinct metallic replacement on its roof repeatedly traveling back and forth in the time before Mendoza's body was discovered. The footage showed the Jeep approaching Mendoza's

---

[2] The brief factual summary in this portion of the opinion is offered to provide general background as to the evidence presented at defendant's trial, not to resolve any contested factual matters. (See *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238 [factual summary in a prior appellate opinion cannot establish ineligibility for section 1172.6 relief at the prima facie stage].)

car with the Jeep's lights off, followed by a flash next to the Jeep that appeared to be "a discharge of a firearm towards the victim's vehicle," followed by "a second muzzle flash" "where someone [was] shooting from the suspect vehicle towards the victim vehicle." A person called police and provided information linking defendant and his brother to the shooting, and police found a Jeep matching the video footage near the witness's residence. The investigation revealed that defendant and another person bought the Jeep together. Further investigation indicated defendant and his brother carried out the shooting for gang-related reasons, with defendant as the car's driver and defendant's brother as the shooter.

Defendant and his brother were jointly tried for the charged offenses resulting from the shooting. The jury was instructed on aiding and abetting using CALCRIM No. 401. In relevant part, this instruction informed the jury that to prove a defendant was guilty of aiding and abetting a crime, the prosecution must prove: "1, The perpetrator committed the crime; [¶] 2, The defendant knew the perpetrator intended to commit the crime; [¶] 3, Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; and, [¶] 4, The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime." Defendant's jury was instructed on murder in accordance with CALCRIM No. 520. In relevant part, this instruction read: "To prove the defendant is guilty of this crime the People must prove: [¶] 1, The defendant committed an act that caused the death of another person; and, [¶] 2, When the defendant acted he had a state of mind called malice aforethought." This instruction informed the jury that there are two kinds of malice, express and implied malice, and it defined the requirements to find either type of malice. For implied malice, the trial court instructed the jury as follows: "The defendant acted with implied malice if: [¶] 1, He intentionally committed an act; [¶] 2, The natural and probable consequences of the act were dangerous to human life; [¶] 3, At the time he acted he knew his act was dangerous to human life; and, [¶] 4, He deliberately acted with conscious disregard to

3

human life." The trial court also instructed the jury that defendant and his brother were prosecuted for first degree murder "under two legal theories," one of which was "the legal principle that a person is guilty of first degree murder when the murder was willful, deliberate and premeditated" and the second of which was "the legal principle that a person is guilty of first degree murder when he murdered by shooting a firearm from a motor vehicle." With regard to the first theory—willful, deliberate, and premeditated murder—the trial court instructed the jury that "[t]he defendant acted willfully if he intended to kill." With regard to the second theory—first degree murder by shooting from a motor vehicle—the trial court instructed the jury that "[t]he defendant committed this kind of murder if, 1, He shot a firearm from a motor vehicle; 2, He intentionally shot at a person that was outside the vehicle; and, 3, He intended to kill that person."

In closing arguments, the prosecutor argued that defendant's brother "is the one that shot and killed Eric Mendoza and [defendant] is the aider and abettor who crept up in the blind spot, driving skulking around, looking around for people." Defendant and his brother were both convicted of first degree murder and active participation in a criminal street gang, and the jury found true allegations that defendant and his brother committed the murder for the benefit of a criminal street gang and that a principal personally and intentionally discharged a firearm and proximately caused death in the commission of the murder.

Defendant and his brother jointly appealed the judgments, raising numerous assertions of error. Among the issues both defendants raised were that the trial court erred when it failed to sua sponte instruct the jury on heat of passion voluntary manslaughter and unreasonable self-defense, and that the trial court erred because its instruction on murder aforethought did not require the prosecution to prove the absence of provocation and unreasonable self-defense in order to establish the element of malice. This court ordered the judgments modified to stay the three-year term imposed for each

4

defendant's count of active participation in a criminal street gang, and this court affirmed the judgments as modified.

**B.** *Defendant's Section 1172.6 Petition*

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) took effect on January 1, 2019, enacting "statutory changes to more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § 1, subd. (b).) Senate Bill 1437 "amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Id.*, § 1, subd. (f).) Accordingly, Senate Bill 1437 amended section 188 to provide: "Except as stated in subdivision (e) of Section 189 [regarding felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Senate Bill 1437 also added what is now designated as section 1172.6, which provides an avenue for a person to petition the sentencing court to vacate the conviction and to be resentenced under these legislative measures. Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) later expanded eligibility for section 1172.6 relief to a "person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime," along with making other changes. (Stats. 2021, ch. 551, § 2, subd. (a).)

In January 2023, defendant petitioned the trial court for relief under section 1172.6. The prosecution opposed the petition in a written submission, arguing as follows: "The jury was given two paths to arrive at first degree murder, murder that is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death . . . and willful,

5

premeditated, and deliberate[] murder. Both require an express intent to kill." The prosecution asserted that defendant's jury was not instructed pursuant to felony murder, the natural and probable consequences doctrine, or any other theory under which malice could be imputed to defendant based solely on his participation in a crime. Therefore, the prosecution contended that defendant was ineligible for section 1172.6 relief as a matter of law, stating: "Persons who intended to kill are still guilty after the changes to sections 188 and 189 effective January 1, 2019. Petitioner intended to kill by either willful, premeditated, and deliberate[] murder or by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death." The prosecution's opposition attached and asked the trial court to take judicial notice of the following documents: the abstract of judgment, the verdict forms, a transcript of the instructions read to the jury,[3] this court's opinion in the initial appeal by defendant and his brother, and selected excerpts of the transcript from defendant's trial (primarily the closing arguments). The record in this matter contains no indication that defendant submitted a reply to the prosecution's opposition, and at the hearing on the section 1172.6 petition, defendant presented no argument.

The trial court took judicial notice of the prosecution's exhibits and summarily denied the petition at the prima facie stage in an oral ruling. This appeal followed.

### III.   DISCUSSION

Under section 1172.6, "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining counts" when all of certain conditions apply. (*Id*., subd. (a).) Under section 1172.6, "the process begins with the

---

[3] The prosecution's opposition did not include a written copy of the jury instructions, noting that the written jury instructions could not be located.

filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' the effective date of Senate Bill 1437 [citation]." (*People v. Strong* (2022) 13 Cal.5th 698, 708.) After the parties have had the opportunity to submit briefings on a section 1172.6 petition, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (*Id.*, subd. (c).) " 'The record of conviction will necessarily inform the trial court's prima facie inquiry . . . , allowing the court to distinguish petitions with potential merit from those that are clearly meritless.' [Citation.] 'Like the analogous prima facie inquiry in habeas corpus proceedings, " 'the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause.' " [Citation.] "[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing." [Citation.] "However, if the record, including the court's own documents, 'contain[s] facts refuting the allegations made in the petition,' then 'the court is justified in making a credibility determination adverse to the petitioner.' " ' [Citation.] Consequently, '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition.' [Citation.]" (*People v. Curiel* (2023) 15 Cal.5th 433, 460 (*Curiel*).)

"We review de novo a trial court's denial of a section 1172.6 petition at the prima facie stage. [Citation.]" (*People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200 (*Bodely*).)

Defendant argues that the trial court erred by denying his section 1172.6 petition at the prima facie stage. Defendant does not contend that his jury was instructed on felony murder or the natural and probable consequences doctrine. He notes that his jury "was instructed on two theories of first degree murder – premeditation and deliberation and

7

shooting from an occupied vehicle," along with aiding and abetting. Defendant "acknowledges that intent to kill is a finding required for both premeditated and drive-by first degree murder . . . ." However, defendant asserts that that "under the language of the instructions given on aiding and abetting and shooting from a vehicle, the jurors could have convicted [him] based on their finding he aided and abetted [his brother's] act of shooting from a motor vehicle without finding he personally intended to kill." Defendant asserts that the jury found defendant's brother was the shooter, that the jury convicted defendant as an aider and abettor, and that the trial court's instruction on first degree murder using a modified version of CALCRIM No. 521 "merely required the jurors to find a defendant intentionally shot a firearm from a motor vehicle at a person outside the vehicle with the intent to kill." Defendant argues that "the jurors likely determined that [his brother] had shot from a motor vehicle with the intent to kill and then attributed that mental state to [defendant]." Specifically, defendant argues: "[T]he aiding and abetting and the shooting from a motor vehicle instructions given in the present case could have been interpreted by the jury in such a way that the jurors concluded [defendant], as the driver of the Jeep, had intended to aid and abet the criminal conduct of shooting from a vehicle without specifically intending to kill. The jurors could have reached this conclusion because the wording of the shooting from a motor vehicle instruction describes the intent to kill as being the mens rea of the shooter so that it is unclear that the aider and abettor must share that same specific intent." He argues that under CALCRIM No. 401 regarding aiding and abetting liability, "the jury need only find that the aider and abettor intended to aid and abet in the commission of the crime. Where as here, that crime is murder by shooting from a motor vehicle, rational jurors could have construed the aiding and abetting instruction to refer to the criminal conduct of shooting from a motor vehicle as opposed to the charged crime of murder, itself." Defendant relies on cases such as *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*), *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), *People v. Powell* (2021) 63 Cal.App.5th 689

8

(*Powell*), and the California Supreme Court's opinion in *People v. Reyes* (2023) 14 Cal.5th 981 (*Reyes*) to support his argument that the instructions in his case did not preclude his conviction of first degree murder based on a theory of imputed malice.

The Attorney General responds that the trial court correctly denied defendant's petition at the prima facie stage, asserting as follows: "The trial court's instructions at [defendant's] murder trial unambiguously told the jurors that they could not convict [defendant] of first degree murder unless they found that he acted with malice aforethought, and the prosecutor never urged that [defendant] had committed any other target offense to satisfy the murder conviction, such as would be the case under a natural and probable consequences theory. Thus, the jurors necessarily concluded that [defendant] personally possessed the requisite mens rea for murder. Even if this court determines that the jury instructions were ambiguous, it is not reasonably likely that the jury understood the instructions to allow the imputation of malice to [defendant] based on the theory that he merely intended to aid and abet the codefendant's act of shooting the victim without harboring malice aforethought."

The record of conviction demonstrates as a matter of law that defendant is not eligible for section 1172.6 relief, and thus the trial court did not err by denying defendant's petition at the prima facie stage. Defendant's brother was convicted of first degree murder. As defendant acknowledges, both theories of first degree murder the prosecution proceeded under required proof of defendant's brother's intent to kill. If the jury convicted defendant's brother of willful, deliberate, and premeditated murder, then the jury was required to find that defendant's brother acted with intent to kill in order to find that defendant's brother acted willfully. If the jury convicted defendant's brother of first degree murder for shooting a firearm from a motor vehicle, then it was likewise required to find that defendant's brother intended to kill Mendoza. "[M]urder that is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first

9

degree." (§ 189, subd. (a).) Under either theory, the jury necessarily found defendant's brother acted with intent to kill. "Intent to unlawfully kill and express malice are, in essence, 'one and the same.' [Citation.]" (*People v. Smith* (2005) 37 Cal.4th 733, 739.) Thus, regardless of the theory on which the jury convicted defendant's brother, the jury's verdict conclusively establishes that defendant's brother shot at Mendoza with express malice.

If the jury found defendant was guilty as an aider and abettor of his brother's intentional killing, then the jury found that defendant possessed his own malice aforethought. To find defendant guilty as an aider and abettor of murder, the jury was instructed that it needed to find that defendant's brother (the perpetrator) committed the crime, that defendant knew the perpetrator intended to commit the crime, that defendant intended to aid and abet the perpetrator in committing the crime, and that defendant did in fact aid the perpetrator's commission of the crime. The "crime" referred to in the aiding and abetting instruction is murder with intent to kill. No other crime was at issue in this case. Defendant could not have intended to aid and abet his brother in committing an intentional killing without possessing his own malice aforethought. The jury was correctly instructed with CALCRIM No. 401 on direct aiding and abetting liability. "[U]nder direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' [Citation.]" (*People v. Gentile* (2020) 10 Cal.5th 830, 843 (*Gentile*), superseded by statute on other grounds as stated in *People v. Wilson* (2023) 14 Cal.5th 839, 869.) Based on the jury's verdicts finding both defendant and his brother guilty of first degree murder, if the jury convicted defendant of murder on a theory of direct aiding and abetting, the jury necessarily concluded that defendant knew that his brother intended to commit murder and that defendant intended to aid and abet his brother in committing the crime of murder. (See CALCRIM No. 401.) Thus, the

10

record of conviction conclusively establishes that defendant was not convicted of murder based on a theory of imputed malice.

The cases defendant relies on, including *Maldonado*, *Langi*, *Powell*, and *Reyes*, do not support his argument that as instructed, the jury could have convicted him of murder even if it found that he was unaware of his brother's full state of mind. In *Langi*, *Powell*, and *Reyes*, the defendants who filed section 1172.6 petitions were convicted of second degree murder. (*Langi*, *supra*, 73 Cal.App.5th at p. 977; *Powell*, *supra*, 63 Cal.App.5th at p. 692; *Reyes*, *supra*, 14 Cal.5th at p. 984.) Here, defendant was convicted of first degree murder, not second degree implied-malice murder, and both theories of first degree murder in the instant case required proof of intent to kill.

In addition, in *Maldonado*, the defendant was convicted of first degree murder after being instructed on direct aiding and abetting and two theories of first degree murder—willful, deliberate, and premeditated murder and lying-in-wait murder, the latter of which did not require proof of intent to kill. (*Maldonado*, *supra*, 87 Cal.App.5th at pp. 1259, 1262–1263.) In this situation, the Court of Appeal stated that "the jury may have found the perpetrator's *purpose* was only to injure or intimidate the victim in a surprise attack," and that as instructed, the defendant's jury could have construed the instructions that to be guilty of aiding and abetting lying in wait first degree murder, the defendant " 'need only have intended to encourage the perpetrator's intentional act—in this case, [a surprise attack on the victim]—whether or not appellant intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing.' [Citation.]" (*Id.* at p. 1266, alterations in original.) Similarly, in *Langi*, the jury convicted the defendant of second degree murder after the defendant participated in a fight involving several people in which the victim was punched in the face, fell, and hit his head, resulting in his death. (*Langi*, *supra*, 73 Cal.App.5th at p. 975.) After the trial court denied the defendant's section 1172.6 petition at the prima facie stage, the Court of Appeal reversed, finding the CALJIC

instruction on aiding and abetting created an ambiguity by allowing the jury to find the defendant guilty of second degree implied malice murder without finding that he personally acted with malice. (*Id.* at pp. 977, 981–982.) Likewise, in *Powell*, the defendant and a codefendant were convicted of second degree murder after a group including them beat and stabbed the victim. (*Powell*, *supra*, 63 Cal.App.5th at pp. 691–692.) The Court of Appeal held that the aiding and abetting instruction was erroneous because without tailoring, the instruction permitted "the application of aiding and abetting liability for implied malice murder . . . ."[4] (*Id.* at p. 714.)

By contrast, defendant's brother in the instant case was prosecuted for first degree murder under two theories, both of which required proof of intent to kill. There is thus no risk that defendant's jury could have construed the instructions to allow it to convict defendant without finding that defendant personally acted with malice. The prosecution's sole theory was that defendant and his brother intended to kill a Sureño, not to achieve some lesser end such as a surprise attack or a beating. The jury found defendant's brother acted with intent to kill. As there was no issue as to what "crime" defendant aided and abetted, the jury necessarily found defendant intentionally aided and abetted an intentional killing, and thus defendant acted with his own malice aforethought.

Finally, *Reyes* does not control in the instant case. Again, the defendant in *Reyes* was convicted of second degree murder, not first degree murder. (*Reyes*, *supra*, 14 Cal.5th at p. 984.) Our Supreme Court concluded that aiding and abetting an implied malice murder remains a viable form of murder liability, notwithstanding recent legislative amendments to California murder law. (*Reyes*, *supra*, at p. 990.) However,

_____

[4] *Powell* involved a direct appeal from the judgment, not a section 1172.6 petition. (*Powell*, *supra*, 63 Cal.App.5th at p. 692.) The Court of Appeal held that defendant's argument concerning the application of Senate Bill 1437 to his case needed to be raised in a section 1172.6 petition, not on direct appeal, and the Court of Appeal stated: "Nothing we say herein is intended to express an opinion as to the appropriate outcome on a section [1172.6] petition should [the defendant] choose to file one." (*Powell*, *supra*, at p. 711, fn. 25.)

the California Supreme Court concluded that the trial court erred by denying the defendant's section 1172.6 petition following an evidentiary hearing. (*Reyes*, *supra*, at pp. 984–986.) The California Supreme Court in *Reyes* held that in denying the section 1172.6 petition after an evidentiary hearing, the trial court "did not appear to recognize that implied malice murder requires, among other elements, proof of the aider and abettor's knowledge and intent with regard to the *direct perpetrator's* life endangering act. [Citation.]" (*Reyes*, *supra*, at p. 991.) The California Supreme Court noted that the defendant's jury was instructed on the natural and probable consequences doctrine at trial, and that the trial court accordingly considered whether the defendant remained guilty of murder under one of two still-valid theories: simple implied malice murder, or directly aiding and abetting implied malice murder. (*Id.* at p. 987.) As to directly aiding and abetting implied malice murder, our Supreme Court stated: "Here, assuming the life-endangering act was the shooting, the trial court should have asked whether Reyes knew that [the perpetrator] intended to shoot at the victim, intended to aid him in the shooting, knew that the shooting was dangerous to life, and acted in conscious disregard for life. [Citation.] Because the court did not do so, its decision was based on an error of law insofar as the court sustained Reyes's murder conviction on a direct aiding and abetting theory." (*Id.* at p. 992.) In the instant case, defendant's jury was not instructed on the natural and probable consequences doctrine or any other theory of imputed malice, and unlike *Reyes*, here the jury necessarily found that the perpetrator (defendant's brother) acted with express malice, not implied malice. The only possible crime defendant could have aided and abetted his brother in committing was the intentional killing of Mendoza, as the record of conviction contains no indication that any other underlying crime was at issue in defendant's case. Thus, *Reyes* does not demonstrate that the trial court erred by denying defendant's section 1172.6 petition at the prima facie stage.

Defendant's jury was not instructed concerning the natural and probable consequences doctrine, which "authorizes precisely what Senate Bill 1437 forbids: it allows a fact finder to impute malice 'to a person based solely on his or her participation in a crime.' [Citation.]" (*Gentile*, *supra*, 10 Cal.5th at p. 847.) Defendant's jury was also not instructed on a felony-murder theory of murder liability, and nothing in the record indicates the prosecution proceeded on a theory that defendant or his brother committed any underlying offense from which to impute malice. Instead, the jury found that the perpetrator (defendant's brother) acted with intent to kill. Defendant's jury was instructed that to find defendant guilty of aiding and abetting, the prosecution must prove that the perpetrator (defendant's brother) committed the crime, defendant knew the perpetrator intended to commit the crime, defendant intended to aid and abet the perpetrator in committing the crime, and defendant did in fact aid and abet the perpetrator's commission of the crime. No other crime apart from first degree murder was at issue in this case. None of the instructions in defendant's case informed the jury that it could impute the malice of defendant's brother to defendant. In addition, the parties at trial did not argue that defendant could be guilty under any theory of imputed malice. Instead, the prosecution argued that defendant and his brother intended to kill Mendoza for gang-related reasons while defendant argued he was not present in the car during the shooting.

To the extent that defendant argues that his instructions erroneously stated the requirements for aiding and abetting murder under the law at the time of his trial, his recourse was to raise this issue in his direct appeal from the judgment. (See *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 936 [section 1172.6 petitioner's challenge that instructions allowed the jury to convict him as a direct aider and abettor of murder on an imputed malice theory "amounts to 'a routine claim of instructional error' that 'could have been asserted on appeal from the judgment of conviction.' [Citation.]"]; see also *People v. Flores* (2023) 96 Cal.App.5th 1164, 1173–1174; *Bodely*, *supra*, 95 Cal.App.5th

14

at p. 1205; *People v. Burns* (2023) 95 Cal.App.5th 862, 867–869; *People v. Farfan* (2021) 71 Cal.App.5th 942, 947.)  Defendant raised issues of instructional error in his direct appeal, but he did not assert that the trial court's instructions on aiding and abetting, murder, or first degree murder were erroneous.

To find defendant guilty of direct aiding and abetting first degree murder in the instant case, the jury would need to convict defendant based on his own malice, not based on a "theory under which malice is imputed to a person based solely on that person's participation in a crime."  (§ 1172.6, subd. (a).)  The record of conviction establishes conclusively that defendant is ineligible for section 1172.6 relief, and thus the trial court did not err in denying defendant's petition at the prima facie stage.  (See *Curiel*, *supra*, 15 Cal.5th at p. 460.)

## IV.    DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

15

_____

BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

LIE, J.

***People v. Guerrero***
**H051363**